## UNITED STATES DISTRICT COURT

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

## DISTRICT OF WYOMING

NOV 29 2010

Stephan Harris, Clerk
Casper

UNITED STATES OF AMERICA

v.

ANTONIO SAUCEDO-CASTANEDA;
CARLOS HERRERA-ARZATE
aka "Guero," "Tatin" and "Benja";
EDUARDO MOLINA aka "Guero" and "Gato";
RODOLFO MORFIN AVALOS aka "Rudy";
and OSCAR CHAVIRA aka "Chanate"

**CRIMINAL COMPLAINT**

Case No. 10MJ244J

I, Ely Hebert, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

From on or about November 2007, up to and including the date of this Complaint, in the District of Wyoming and elsewhere, the Defendants, **ANTONIO SAUCEDO-CASTANEDA, CARLOS HERRERA-ARZATE aka "Guero," "Tatin" and "Benja," EDUARDO MOLINA aka "Guero" and "Gato," RODOLFO MORFIN AVALOS aka "Rudy" and OSCAR CHAVIRA aka "Chanate,"** did knowingly, intentionally and unlawfully combine, conspire, confederate, and agree with each other, and with other persons known and unknown, to possess with intent to distribute, and to distribute, 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance.

In violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(B).

I further state that I am a Drug Enforcement Administration Special Agent and that this complaint is based on the following facts:

Your Complainant is employed as a Special Agent with the United States Drug Enforcement Administration, and at all times mentioned herein was acting in that official capacity.

*(Affidavit Continued)*

Continued on the attached sheet and made a part hereof:   **XX** Yes       No

Signature of Complainant
**Ely Hebert**

Sworn to before me and subscribed in my presence,

__November 29, 2010_____     at   **Casper, Wyoming**_____

Date
**R. Michael Shickich**
**U.S. Magistrate Judge**

City and State

Name & Title of Judicial Officer          Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
## SPECIAL AGENT ELY HEBERT

### U.S. vs. Antonio Saucedo-Castaneda, *et al.*

1.      As a result of your Complainant's participation in and consultation with other law enforcement personnel in the investigation of matters referred to in this affidavit, your Complainant is familiar with the facts and circumstances of this investigation.

2.      On November 15, 2007, DCI agents learned during a custodial interview that "Jerry" was a cocaine distributor in Gillette, Wyoming.  The interviewee stated he/she was introduced to "Jerry" by another person who previously plead guilty in a conspiracy to distribute methamphetamine in Wyoming.  The interviewee told the agents he/she believed "Jerry" traveled to Colorado to pick up cocaine for re-distribution in Wyoming.

3.      On November 29, 2007, DCI agents interviewed another person (charged with drug related crimes) in Gillette, Wyoming.  During the interview, that person stated they knew two sources for cocaine, "Jerry" and "Rudy."

4.      On June 18, 2008, DCI agents interviewed another individual in Gillette, Wyoming. This person was arrested for possession of methamphetamine and marijuana in Gillette, Wyoming. They stated they associated with "Jerry" and "Rudy" beginning January or February 2008.  During this interview, the person told the agents he/she learned during a conversation with "Jerry" and "Rudy," identified as **RODOLFO MORFIN-AVALOS aka "Rudy" (AVALOS),** their source for methamphetamine and cocaine had car troubles somewhere between Washington and Wyoming.

The person also described "Jerry" as "the main guy" for methamphetamine and cocaine and had purchased both methamphetamine and cocaine from "Jerry."

5.      On August 25, 2008, DCI agents interviewed another person (charged with drug related crimes) in Gillette, Wyoming. This person admitted to distributing methamphetamine and cocaine for "Jerry" and "Rudy." This person told the agents "Rudy" was in Spokane, Washington, and is a member of the Serrano's street gang. The person stated "Rudy" is one of the largest drug distributors in Campbell County, Wyoming, but "Jerry" is the money behind the operation and "has all the pull." The person told the agents "Rudy" is in debt to "Jerry" for $50,000.

6.      On August 11, 2009, DCI agents interviewed another person (charged with drug related crimes) in Gillette, Wyoming. This person admitted to purchasing methamphetamine from "Rudy" beginning approximately June of 2008. During the interview, the person identified "Jerry" as GERARDO ZAPATA-REYES (ZAPATA) and stated ZAPATA currently is a runner of methamphetamine from Washington to Gillette, Wyoming.

7.      On August 19, 2009, DCI agents interviewed another person (charged with drug related crimes) in Casper, Wyoming. During this interview, the person told the agents he/she and another individual obtained methamphetamine from "Jerry" (ZAPATA) who lived in Westview Trailer Court on Echeta Road in Gillette, Wyoming, in the spring of 2009. This person further stated he/she and another individual broke into the ZAPATA Echeta Road residence and stole approximately $16,000 in cash. This person stated there were also several guns in the residence.

-2-

This person stated a large portion of the stolen money was later used to buy methamphetamine from ZAPATA.

8.     On September 4, 2009, DCI and DEA agents interviewed another person (charged with drug related crimes) in Casper, Wyoming.  During this interview the person told the agents he/she met "Tony" at 3201 Echeta Road #60, Gillette, Wyoming. This person also met "Rudy" and "Jerry" (ZAPATA) there.  This person admitted to purchasing methamphetamine from "Rudy." "Rudy" later told this person Rudy had to leave town and gave this person the number for "Tony." This person obtained approximately one-half pound of methamphetamine from "Tony" and last purchased methamphetamine from Tony just prior to this person's arrest in 2009.  This person believed "Tony" to be from Arizona. This person stated "Tony's" business was very well organized. This person stated if "Tony" was out of town, he would send "Jerry" (ZAPATA), identified by photograph. This person also stated "Tony" carries a handgun in an ankle holster.

9.     On November 17, 2009, DCI agents interviewed another person (charged with drug related crimes) in Casper, Wyoming.  During the interview, this person admitted to purchasing approximately six ounces of methamphetamine in the spring of 2009 and the sources were "Jerry" (ZAPATA) and "Rudy" (**AVALOS**).

10.     On December 29, 2009, DCI agents interviewed another person (charged with drug related crimes) in Cheyenne, Wyoming.  During the interview, this person told the agents he/she

knew both ZAPATA and **AVALOS** and had met them in Washington. This person stated **AVALOS** moved "a lot" of cocaine and marijuana for ZAPATA and **AVALOS** had a cocaine habit.

11.    On January 27, 2010, DCI agents interviewed another person (charged with drug related crimes) in Gillette, Wyoming. During the interview, this person told the agents he/she purchased methamphetamine from "Tony," "Jerry" (ZAPATA) and "Rudy." This person stated "Jerry" (ZAPATA) and "Tony" lived at Westview Trailer Court, 3201 Echeta Road, Gillette, Wyoming. This person stated he/she purchased approximately one-half pound of methamphetamine from "Tony" and "Jerry" (ZAPATA) from late 2008 until approximately January of 2010 when he/she was arrested. ZAPATA was again identified by photograph. This person stated ZAPATA and "Tony" almost always carried guns.

12.    On January 30, 2010, Montana State Trooper Jason Grover conducted a traffic stop for a speeding violation on a west bound vehicle occupied by ZAPATA. Upon ZAPATA's written and verbal consent for the Trooper to search the vehicle, the trooper located and seized a .45 caliber semiautomatic handgun, a small quantity of marijuana concealed under the dashboard of the vehicle, and currency totaling $8,760 (contained in separate plastic baggies).

13.    On March 15, 2010, DCI agents conducted surveillance of ZAPATA and observed him driving a vehicle registered to **ANTONIO SAUCEDO-CASTANEDA** ("Tony") at 3201 Echeta Road #60, Gillette, Wyoming.

14.     On July 10, 2010, DCI agents interviewed another person (charged with drug related crimes) in Gillette, Wyoming. During the interview, this person told the agents he/she knew "Oscar" to be a source of methamphetamine in Gillette, Wyoming. This person had seen "Oscar" with large sums of money.   This person also saw "Oscar" with a bag, approximately 6"x6", full of methamphetamine.  Based on prior surveillance conducted by agents, "Oscar" was identified as **OSCAR CHAVIRA aka "Chanate"**.

15.     On August 10, 2010, DCI agents conducted a controlled purchase of methamphetamine from **CARLOS HERRERA-ARZATE aka "Guero," "Tatin" and "Benja" (HERRERA)**. During the purchase, agents identified the source of supply for the methamphetamine to be **ANTONIO SAUCEDO-CASTANEDA (SAUCEDO)**, otherwise known as "Tony."

16.     On August 16, 2010, agents conducted a controlled purchase of methamphetamine from **HERRERA**. The methamphetamine acquired from **HERRERA** was subsequently sent to the DEA Western Laboratory.   The results of the test showed the substance positive for methamphetamine, 92.2% overall purity, 11.8 grams of actual drug. During this purchase, **OSCAR CHAVIRA aka "Chanate" (CHAVIRA)** was identified as the individual who brought **HERRERA** to the meet location.  **HERRERA** said during this transaction that the "guy" in the white truck **(CHAVIRA)** was scared of the police.

17.     On August 26, 2010, agents conducted a controlled purchase of methamphetamine from **HERRERA**. The methamphetamine acquired from **HERRERA** was subsequently sent to the

DEA Western Laboratory.   The results of the test showed the substance positive for methamphetamine, 97.9% overall purity, 108.7 grams of actual drug.

18.     On October 6, 2010, an order was sought and approved for the interception of wire communications for the telephone utilized by **HERRERA**.

19.     On October 9, 2010, **HERRERA** received a call from an individual who identified himself as "Perro."   This conversation was conducted in Spanish and translated by a linguist authorized by the government to perform such action.   The following is a summary of the conversation:  "Perro" asked **HERRERA** his location and **HERRERA** said he was with "Tico." **HERRERA** then passed the phone to "Tico."  "Perro" asked "Tico" if he had talked with "Tony." "Tico" said no and "Perro" asked if they were getting high.  The two then talked about Mexico. "Tico" then gave the phone back to **HERRERA** and "Perro" asked if they were consuming cocaine. **HERRERA** said not cocaine, but the other one.  "Perro" asked if crystal [methamphetamine] and **HERRERA** affirmed.   **HERRERA** said he had finished the ball.   "Perro" said he thought **HERRERA** was going to sell it.  **HERRERA** said he thought so too, but he had gone over there and brought everything and it went to shit already.  "Perro" asked **HERRERA** if he remembered that it was going to happen to **HERRERA** the same thing that had happened to "Perro."  **HERRERA** affirmed.  "Perro" asked how much it was.  **HERRERA** said it was one.  "Perro" asked if it was worth 3000 bucks.  **HERRERA** responded two.

20.     On October 11, 2010, **HERRERA** placed an outgoing call to **EDUARDO MOLINA aka "Guero" and "Gato"**. This conversation was conducted in Spanish and translated by a linguist authorized by the government to perform such action.  The following is a summary of the conversation:  **HERRERA** asked **MOLINA** to call Eric and to ask what Eric needed.  **HERRERA** said that Eric had been calling and that Eric sent a message in the morning and **HERRERA** did not understand what it said.  **MOLINA** said that there is a new dude that is into cocaine and was asking Eric for some.  **HERRERA** said that he had it with him and that Eric could buy it.  **MOLINA** said the third party wanted an ounce.  **HERRERA** told **MOLINA** to tell third party to try it first. **HERRERA** said that he had with him a hundred and fifty if Eric wanted it.  **MOLINA** said he would tell Eric to call **HERRERA**.  **HERRERA** acknowledged.

21.     On October 23, 2010, **HERRERA** received an incoming call from **MOLINA**.  This conversation was conducted in Spanish and translated by a linguist authorized by the government to perform such action.  The following is a summary of the conversation:  **MOLINA** told **HERRERA** that his friend from work was looking for something.  **HERRERA** asked **MOLINA** what he was looking for.  **MOLINA** told **HERRERA** he was looking for cocaine ("snow white").

22.     On October 23, 2010, **HERRERA** received another incoming call from **MOLINA**. This conversation was conducted in Spanish and translated by a linguist authorized by the government to perform such action. The following is a summary of the conversation:  **MOLINA** asked **HERRERA** if he can get anything.  **HERRERA** said just "glass" and nothing else.

-7-

MOLINA asked if **HERRERA** had crystal [methamphetamine]. **HERRERA** told **MOLINA** it was the same thing. **HERRERA** said an ounce was two and a half [$2,500]. **MOLINA** relayed the message to a third party who spoke English, then asked **HERRERA** how much a fourth was. **MOLINA** told **HERRERA** he was going to give him the guy's number. **HERRERA** said not to give some random guy his number. **MOLINA** asked **HERRERA** how much the third party needed to buy. **HERRERA** told **MOLINA** the third party needs to buy a lot. **MOLINA** asked **HERRERA** how much he needed to buy so he could make the deal. **HERRERA** told **MOLINA** it is a hassle because he would have to call someone else who would have to go to someone else and the guy would not want to do all that for one gram. **MOLINA** relayed the message to the third party. **MOLINA** asked what the minimum amount was. **HERRERA** said he didn't know. **MOLINA** told **HERRERA** to call his source and find out. **MOLINA** told **HERRERA** his work buddy would buy the eighth.

23.     On October 14, 2010, **HERRERA** received a call again from "Perro." This conversation was conducted in Spanish and translated by a linguist authorized by the government to perform such action. The following is a summary of the conversation: "Perro" asked **HERRERA** what was up and **HERRERA** said he was at his house. "Perro" asked if **HERRERA** was looking for another one. **HERRERA** told "Perro" he still had some left over for the weekend. "Perro" asked how much and **HERRERA** said like an eighth. "Perro" asked **HERRERA** if he had seen "Falcon."

-8-

HERRERA said he had not seen him since "Perro" had left. "Perro" asked **HERRERA** for "Falcon's" number. (This investigation has shown "Falcon" to be ZAPATA).

24.     On October 22, 2010, ZAPATA was stopped in a vehicle found to contain approximately 136.2 grams of methamphetamine in Gillette, Wyoming. The methamphetamine acquired from ZAPATA was subsequently sent to the DEA Western Laboratory. The results of the test showed the substance positive for methamphetamine, 44.3% overall purity, 60.3 grams actual drug.

25.     Based on the foregoing, your Affiant believes that there is probable cause to believe that **ANTONIO SAUCEDO-CASTANEDA, CARLOS HERRERA-ARZATE aka "Guero," "Tatin" and "Benja," EDUARDO MOLINA aka "Guero" and "Gato," RODOLFO MORFIN AVALOS aka "Rudy" and OSCAR CHAVIRA aka "Chanate,"** have committed violations of federal law from on or about November 2007, to wit:  conspiracy to possess with intent to distribute, and to distribute, methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(B).

**FURTHER YOUR AFFIANT SAYETH NOT.**

_____
Ely Hebert, Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me this 29th day of November, 2010.

_____
R. Michael Shickich
United States Magistrate Judge

-9-

# PENALTY SUMMARY

**DATE:**                    November 29, 2010

**DEFENDANT NAME:**          **ANTONIO SAUCEDO-CASTANEDA**

**VICTIM:**                  NO

## OFFENSE AND PENALTIES:

OFFENSE:                 **21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(B)**
                         (Conspiracy to Possess with Intent to Distribute, and to
                         Distribute, Methamphetamine)

PENALTIES:               5-40 years imprisonment
                         $2,000,000 fine
                         4 years supervised release
                         $100 special assessment
                         Class "B" felony

**TOTALS:**              5-40 years imprisonment
                         $2,000,000 fine
                         4 years supervised release
                         $100 special assessment

**AGENT:** Ely Hebert/DEA        **AUSA:** Stephanie I. Sprecher

**ESTIMATED TIME OF TRIAL:**          **INTERPRETER NEEDED:**

   √   five days or less              √   Yes
_____   over five days             _____   No
_____   other

**THE GOVERNMENT:**

   √   will                      _____   The court should not grant bond
                                         because the defendant is not bondable
                                         because there are detainers from other
_____   will not                          jurisdictions

**SEEK DETENTION IN THIS CASE.**

## PENALTY SUMMARY

**DATE:**                         November 29, 2010

**DEFENDANT NAME:**    CARLOS HERRERA-ARZATE
                                  aka "Guero," "Tatin" and "Benja"

**VICTIM:**                       NO

**OFFENSE AND PENALTIES:**

OFFENSE:                  **21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(B)**
                          (Conspiracy to Possess with Intent to Distribute, and to
                          Distribute, Methamphetamine)

PENALTIES:                5-40 years imprisonment
                          $2,000,000 fine
                          4 years supervised release
                          $100 special assessment
                          Class "B" felony

**TOTALS:**               5-40 years imprisonment
                          $2,000,000 fine
                          4 years supervised release
                          $100 special assessment

**AGENT:** Ely Hebert/DEA        **AUSA:** Stephanie I. Sprecher

**ESTIMATED TIME OF TRIAL:**       **INTERPRETER NEEDED:**

✓  five days or less              ✓  Yes
___  over five days               ___  No
___  other

**THE GOVERNMENT:**

✓  will                  ___  The court should not grant bond
                              because the defendant is not bondable
                              because there are detainers from other
___  will not                 jurisdictions

**SEEK DETENTION IN THIS CASE.**

## PENALTY SUMMARY

**DATE:**                              November 29, 2010

**DEFENDANT NAME:**        **EDUARDO MOLINA aka "Guero" and "Gato"**

**VICTIM:**                          NO


**OFFENSE AND PENALTIES**:

OFFENSE:                          **21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(B)**
                                           (Conspiracy to Possess with Intent to Distribute, and to
                                           Distribute, Methamphetamine)

PENALTIES:                       5-40 years imprisonment
                                           $2,000,000 fine
                                           4 years supervised release
                                           $100 special assessment
                                           Class "B" felony

**TOTALS:**                         5-40 years imprisonment
                                           $2,000,000 fine
                                           4 years supervised release
                                           $100 special assessment


**AGENT:** Ely Hebert/DEA        **AUSA:** Stephanie I. Sprecher


**ESTIMATED TIME OF TRIAL:**        **INTERPRETER NEEDED:**

√    five days or less              √    Yes
___  over five days                ___  No
___  other


**THE GOVERNMENT:**

√    will                          ___  The court should not grant bond
                                        because the defendant is not bondable
___  will not                           because there are detainers from other
                                        jurisdictions

**SEEK DETENTION IN THIS CASE.**

# PENALTY SUMMARY

**DATE:**                        November 29, 2010

**DEFENDANT NAME:**      **RODOLFO MORFIN AVALOS aka "Rudy"**

**VICTIM:**                     NO


**OFFENSE AND PENALTIES**:

OFFENSE:                 **21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(B)**
                         (Conspiracy to Possess with Intent to Distribute, and to
                         Distribute, Methamphetamine)

PENALTIES:               5-40 years imprisonment
                         $2,000,000 fine
                         4 years supervised release
                         $100 special assessment
                         Class "B" felony

**TOTALS:**              5-40 years imprisonment
                         $2,000,000 fine
                         4 years supervised release
                         $100 special assessment


**AGENT:** Ely Hebert/DEA          **AUSA:** Stephanie I. Sprecher


**ESTIMATED TIME OF TRIAL:**          **INTERPRETER NEEDED:**

__√__  five days or less        .        __√__  Yes
_____  over five days                    _____  No
_____  other


**THE GOVERNMENT:**

__√__  will                              _____  The court should not grant bond
                                         because the defendant is not bondable
                                         because there are detainers from other
_____  will not                          jurisdictions

       **SEEK DETENTION IN THIS CASE.**

## PENALTY SUMMARY

**DATE:**                     November 29, 2010

**DEFENDANT NAME:**   **OSCAR CHAVIRA aka "Chanate"**

**VICTIM:**                   NO

**OFFENSE AND PENALTIES**:

OFFENSE:                **21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(B)**
(Conspiracy to Possess with Intent to Distribute, and to
Distribute, Methamphetamine)

PENALTIES:              5-40 years imprisonment
$2,000,000 fine
4 years supervised release
$100 special assessment
Class "B" felony

TOTALS:                  5-40 years imprisonment
$2,000,000 fine
4 years supervised release
$100 special assessment

**AGENT:** Ely Hebert/DEA          **AUSA:** Stephanie I. Sprecher

**ESTIMATED TIME OF TRIAL:**        **INTERPRETER NEEDED:**

__√__  five days or less            __√__  Yes
____  over five days               ____  No
____  other

**THE GOVERNMENT:**

__√__  will                          ____  The court should not grant bond
                                       because the defendant is not bondable
                                       because there are detainers from other
____  will not                       jurisdictions

        **SEEK DETENTION IN THIS CASE.**